## HURT vs. THE STATE.

1. A verbal permission from the owner of a slave to sell "*dry goods*" to the slave, is too general and indefinite. The permission, whether verbal or in writing, should specify the article to be sold.

(DARGAN, C. J., *dissenting*, held that the term "*dry goods*" was sufficiently definite.

ERROR to the Circuit Court of Perry. Tried before the Hon. Geo. D. Shortridge.

A. B. MOORE, for plaintiff in error.

ATTORNEY GENERAL, for the State.

PARSONS, J.—Mr. Hurt was convicted on an indictment for selling a pair of shoes to a slave. On the trial he admitted the sale, and that he received payment from the slave. But he then proved by the owner of the slave that, two months before the time of the sale, he gave to Mr. Hurt verbal permission to sell dry goods, at any time, to the same slave, provided he made him pay the money for them, but prohibited a sale of ardent spirits. The court charged, in substance, that the particular articles to be sold to the slave must be expressed in the permission; and if not so specified, the jury should find against Mr. Hurt, and he excepted. The act is, that "Every person who shall buy, sell or receive from any slave, any commodity, of any kind or description, without the leave or consent of the master, owner or overseer of such slave, verbally or in writing, expressing the articles permitted to be sold or bartered, first obtained, shall, on conviction, be fined," &c.—Clay's Dig., 437, § 8. The permission was general to sell dry goods.

Most owners, I believe, allow to their slaves reasonable time to make provision for the comfort of themselves and families, and, to that end, permit them to deal with honest white persons, so far as to sell their commodities, or to expend their money, in the purchase of necessaries. And it is very true, as argued by Mr. Hurt's counsel, that it is quite an inconvenience to the owner and some privation to the slave, if he must mention every article in the permission, though various articles might be required; and,

indeed, the negro might not very well know what he would prefer, until he gets to the store or market where he wishes to purchase his supplies.

But the language of the act is plain, and it requires that the articles should be expressed: And if a permission so general as "dry goods," is a compliance with the act, it is difficult to imagine what other words or phrases could be too indefinite. In requiring the articles to be specifically stated, we think the Legislature designed to suppress, and that it adopted a very proper mode of suppressing, a general evil in some parts of the country, growing out of a clandestine traffic between slaves and a particular class of white persons. It was intended that the owner might authorise his negro to buy such articles as he should express in the authority, so that the negro should have the privilege of making himself and family comfortable and even respectable in his caste, but not to dispense with the owner's discretion in this object altogether. For if a negro may buy all sorts of dry goods from a man having and meriting, as Mr. Hurt very probably did, his owner's confidence, he might soon acquire goods enough to become a pedlar among other negroes and the class of white men, whose conduct led to the passage of the act, and thus, it is obvious, the spirit and language of the act, express and plain as it is, would be violated. That Mr. Hurt had no bad motive and intended no violation of the act, is very clear. But, on the other hand, his act itself was a violation of the law, and it is not contended that we can admit his misunderstanding of the law as an excuse for the offence. Such an excuse, if generally admitted, would annul the criminal code and shake the foundations of society.

Let the judgment be affirmed.

DARGAN, C. J.—I cannot concur in the opinion of the court delivered in this case. I think the term, dry goods, sufficiently descriptive of the article or commodity permitted to be sold. I therefore would hold, that if the defendant sold the shoes to the slave under the permission from his master, *to sell him dry goods*, that the defendant has not violated the statute.